Thank you. Good afternoon, Your Honors. I'm Amy Bellantoni, and I represent the appellant Mark Baird. I'd like to reserve five minutes for rebuttal. This case is about a challenge to two California laws, Penal Law Section 25850, which bans the possession of a loaded firearm in public, and 26350, which bans the unloaded open carriage of a handgun. So what is the nature of your challenge? Is it an as-implied challenge? The nature of the challenge is two-fold. It's a facial challenge to both of the statutes because under N.E.R. It's a facial challenge? There's a facial challenge to both of the statutes, yes. They criminalize conduct that is presumptively protected by the plain text of the Second Amendment. So if it's a facial challenge, then it was okay for the district court to talk about licensing because that's a part of this challenge? Because it is the fact, if you're going to challenge the whole statute, licensing is a part of the whole statute. And so that's why I said, what is this challenge? And there is also an as-implied challenge as well. Okay, so the as-implied challenge, what is that? The as-implied challenge is the challenge to both statutes as applied to my client as far as the open carriage of a handgun is concerned. Okay, so it's as it applies to your client. So how was the statute applied to your client? Why can't your client apply for an open carry license using the existing application that's in the statute? Under the penal code section, California requires all applications for a pistol license to be submitted. Every application for a pistol license must be the application that is published by the California Department of Justice. And there's one published. There sure is. And this application that's published seems to apply to both a concealed carry and an open carry. Well, the application that last I checked was published by the DOJ has no avenue for the application for an open carry license. Well, just a minute, just a minute. It says here that the license shall be issued in either of the following formats. The license to carry the concealed pistol, which is the concealed carry, and where the population of the county is less than 200,000 persons, then the license to carry loaded and exposed. You can issue this license on both. The actual application that's filled out and the application that's submitted to the DOJ is simply entitled concealed carry. Well, it is entitled, but under the very application here, it says you can do it for either. It does identify that section of the statute that allows for open carry, but in fact, there has been no open carry license issued since this beginning. Now, just a minute. How do you know there's been no open carry license issued? Because every licensing officer in the state of California is required to submit to the of every license application that is made, and through a FOIA request, which is part of the record here, there has been no application made and no open carry license issued. Well, that is, I mean, I read your FOIA application letter. It says, we checked with knowledgeable persons and searched logical places, and we didn't find any documents which are responsive to this request. The sections authorize the sheriff to issue these permits because the department is not the issuing authority for the permits, and because the information the department has is only as reliable as what is reported by the local agencies, it does know what has happened in the local agencies. And in the sworn declaration of my client, he averts that no open carry license has been issued in his county as well. He's had conversations, personal conversations, with both sheriffs that have governed his county in Siskiyou. And neither has, he's applied, and neither has issued an open carry license, and neither is, both were reluctant to even address why no open carry license would be issued. And again, the application itself says concealed carry, and there is no avenue for open carry. And, you know, since 2019, when this case was commenced, there's been no evidence put forth by the state to even suggest that any, that one open carry license has been issued in the state of California. The reason that I, we've got to go on the record that's in front of us, and the record in front of us has the license, which I read from, it has the FOIA request, which I read from, and otherwise it just has your client's good declaration that nobody's getting them, but really that's not very good evidence that nobody gets them in California. So I'm having a tough time whether, are you arguing this is a ban just for his county, or is it a ban for all of California, or what is it you're arguing? We did ask the state to produce documentation. Again, there is a legal requirement for every licensing officer throughout the state to send documentation of every application and every denial and every approval. So if there had been an open carry license application submitted or taken, it would have been on file. Is that in the record? Yes, Your Honor. Where? I have his, I have his affidavit. What else do I have? In the record, it makes reference to the penal law section, I believe, in my brief that talks to the requirement of the licensing officers to provide that information to the State Department of Justice. So there is a presumption there that they would have complied with the law, and had there been an open carry license issued, it would have been on file and recorded with the Department of Justice, which there is not. Well, but did we ever ask the Department of, I mean, I have the FOIA request, and I know what they're saying, and all they're saying is, I don't know what happened with the sheriffs. And the state has not, in the state, we're suing the Attorney General, who is the head of the Department of Justice, and they've produced absolutely no documents to support the issuance of one open carry license in the state. Well, the reason I'm asking you these questions is because when I read the end part of their briefs, it doesn't seem to me that they agree with you that there's never been a license issued. They think this license applies to both, and they don't agree with you that they can say whether there's ever been a license issued or not. Their briefs suggest that there's no evidence in this record to suggest that. That's why I'm kind of focusing on you. Understood, Your Honor. I'm not trying to beat you up at all. If this is an as-applied ban, I'm trying to figure out how, why the ban is. I mean, on his affidavit, I might say the ban applies to his counties, or could. Not sure it's enough evidence, but could. But that's all I'm trying to do, is get to the bottom line on that. And in the record, during summary judgment, or at least a portion of the summary judgment or in the complaint, but in the record, you know, I had personally gone through the websites for each licensing officer in the entire state and put website information in there, which demonstrates that when you go to their websites, the only, for each one, the only available license is a concealed carry license. There is no avenue, and there are applications digitally submitted online. There's no avenue for submitting an open carry license application. So that's the, and there was also discovery made of the state, and they also could not identify, they're the record keeper. They're the record keeper. Can I ask a follow-up? Yes. I'm trying to figure out how much, and I think it's related to the question my colleagues asked, I'm trying to figure out how much your argument turns on whether there's a license for it. I understand that's one of your arguments, but am I correct in thinking that for 95 percent of the state by population, you just cannot get an open carry license? I mean, I'll ask the state this, but that's my understanding. Well, that's also correct. Unless you live in a county of 200,000 population or less, open carry is not an option for you. So if you live in, my understanding is if you, putting aside the, let's assume there's a form, and you can use the regular concealed carry form, if you live in L.A. and you want to open carry in, I don't know the counties, they're right next to me where I live in Reno, but they're rural counties, you can't get an open carry license for those counties, even though in theory a person could. You can't get it because you live in L.A., you're a resident of L.A. So it's only available to the residents of those counties, in theory at least, at best. Under statute, the open carry license, if issued, would only be available for the residents of the population.  So if you live in an urban county. No, you can't get an open carry. Or you live in Nevada, or you live anywhere other than in that county, you can't get, and then if you get the permit, my correct understanding that you can only open carry in that county. It's void crossing the county line. So even putting aside this whole can you apply for a permit, best case scenario, you can only open carry in your county, if you live in a rural county. All the people that don't live in rural counties, they have a flat ban on open carry everywhere. Correct. I mean, and that's aside from all of these other questions, I think, if that's what you're saying. I appreciate my colleagues' questions, because that's why I ask you, what's this all about? Because it seems to me that you are challenging sections 25850, 26350. You originally challenged 26150 and 26155, which he's now talking about, but you eliminated those from the third amended complaint, as I understand it. So now we're only back to the original criminalizing the open carriage of handguns for self-defense in 25850 and 26350, is that right? Correct. So we can't even, we're not really able to talk about the fact that one can't get a license in all the counties, or one can't carry it in all the counties, because you left that out of your complaint. Well, I disagree, because... Well, how am I going to do it if you lift it out of your complaint? I'd really be interested in hearing your answer to that question. Yeah, I would... No, no, no. Let her answer, please, if you don't mind. If I could just briefly begin with the facial challenge. This facial challenge is to criminal statutes that punish as a crime conduct that is presumptive protected by the plain text of the second amendment, bearing arms. Heller has defined bearing arms as open carry and concealed carry using Justice Ginsburg's dissent in the Muscarella case to wear upon the person or to carry in the pocket. The state brings up the exceptions and the defenses, and in those defenses and exceptions they bring up the licensing statutes. So they're the ones leaning on the licensing statute, and if we're going to look at the licensing statute, which has no historical analog whatsoever, it's not even within... Forget about an analogical twin, it's not even in the same family tree, then we need to look at what the statute and the licensing statute says. So even if it were an analog, the licensing statute provides no respite because it still bars the majority of Californians from exercising the right to open carry, and it doesn't even allow the people in those 200,000 or less populated counties from carrying outside of their county. So once... Make sure I understand. I'm trying to follow. The statutes that you are not challenging and the ones that you are challenging. Are you challenging the statute that bans the open carry statewide? Yes. Okay, so that's challenged. And then the state has come in and said, yeah, but you're not challenging the fact that we grant a license, but there is no statute that allows you to get a license to carry in, say, San Francisco or San Diego or... Is that... Correct. And so it's an odd thing to say, well, we have a statute that gives a license for something, but it doesn't give a license for the activity that you're saying that's wrong constitutionally. So that... So you are challenging the statute that actually bans you from carrying in, say, San Francisco, open carry? Yes. I'll ask the state whether they agree that you are challenging that, and it's their defense that, no, but you can get a concealed carry permit, and you're not challenging that. That you could also get a concealed carry permit. You're not challenging and saying the concealed carry permit license is somehow, the statute is somehow problematic in this litigation. You're just saying it doesn't save the ban on open carry. The availability of a concealed carry license does not save the ban on open carry.  And the criminal...  Yes. Why does it not save the ban on open carry? Why? Because there is no historical analog, nor has the state identified one for banning 50% of the rights to bear arms as the plain text codifies. Well, maybe we ought to look at that. I mean, isn't there... Doesn't Heller say that from Blackstone through the 19th century cases, commentators and courts routinely explained that the right to keep and bear arms was not the right to keep and carry any weapon whatsoever in any manner whatsoever? Yeah, I love that phrase. So we're not looking to carry any weapon. We're not looking to carry machine guns. We're looking to carry weapons that Heller recognized are in common use for self-defense. And we're not looking to carry in any manner, we're not looking to carry brandishing or menacing individuals or terrorizing people, but in a peaceful and calm manner, in a holstered manner for self-defense, which is what's protected by the scope of the Second Amendment. Well, the worry that I have with your statement is that in the state of New York, which was Bruin State, the state of New York did not allow and does not allow open carry. Correct. And what was challenged there was not the open carry, but the concealed carry. And the fact that the state of New York did not allow and did not ever allow open carry seemed to be a factor in the Bruin decision. Because even though they were challenging concealed carry, and the Supreme Court threw out their challenge, or threw out the concealed carry ban, that one of the reasons it seemed for Bruin was that it was because New York had already outlawed open carry. And they couldn't outlaw both of them because public carry was the mantra. And I'm not saying that's it. I'm just saying when I read this, in fact, at 53, it says, in fact, however, the history reveals a consensus that states could not ban public carry altogether. Respondents cited opinions agreed that concealed carry options were constitutional only if they did not similarly prohibit open carry. And at 59, they say, finally, states are able to lawfully eliminate one kind of public carry, concealed carry, so long as it left the option to carry openly, which seemed to suggest that when you're looking at these statutes, if you prohibit open carry, you can't prohibit also concealed carry. But if you're like California, and you don't prohibit concealed carry, but you allow it, that you can prohibit open carry. Now just answer. I mean, I don't know. I'm just reading this stuff. Okay. So a couple of things there. The Bruin case did not specifically challenge the open carry ban. There is a case pending now in the Second Circuit that does challenge New York State's open carry ban. Second, the historical analog for this, we can ban one but can't ban the other. First of all, that goes against Heller, which rejected any kind of alternative. Where in Heller does it say that? Well, in Heller, it said, and it's not enough, I'm paraphrasing now, that the government I think you're paraphrasing a lot because I don't think it said that in Heller. It's not enough that the government can say you can carry or you can possess rifles and shotguns to the detriment of possessing handguns. So the either or argument does conflict with Heller because handguns, rifles, and shotguns are all weapons in common use for lawful purposes. But I want to get back to those cases. My understanding was that this argument was already made and addressed by our court in  And you're familiar with Peruta? Yes. Pre-Bruin. But as I understand it, and I think it was, I think it was maybe, I don't know. I was on that. Go ahead. Give it to him. I'd love to hear what she's going to say about Peruta.  So I think it was Judge. Judge Willie Fletcher. Willie Fletcher, yeah. Judge Fletcher. I think it was Judge Fletcher. And he wrote that, because the argument I think that was made in Peruta was in San Diego, you can't get an open carry. So you have to let us conceal carry. As I recall, Judge Fletcher and the majority of our court rejected that and said, listen, essentially, now I'm paraphrasing, but the analysis was that they're not fungible. You can't just say, which I think is kind of what the state's argument is, that if you allow one, you have to allow the other, that it only works one way. And this was pre-Bruin. And he said, if there is such a right to public carry, and we now know post-Bruin there is, it is a right to carry a firearm openly. And I thought Peruta rejected that. And so the question I've got, I guess, is one of the issues that comes up in a lot of these Second Amendment cases, and the state is regularly arguing that pre-Bruin precedent has not been abrogated by Bruin and Rahimi. And so I'm curious, what is your view? Has this particular ruling in Peruta been abrogated by Bruin? Or is it still true? I mean, are we bound, even if we were to want to go the other way? Are we bound by the fact that they're not fungible because of Peruta? So I believe that this court recognized the abrogation of Peruta in the- Well, no, I mean, obviously some, you know, I think it says abrogated on other grounds. And I'm not saying that some parts of Peruta were not abrogated. I mean, this particular part of Peruta. So can we go back to the reasons for this whole concealed carry can be banned as long as open carry is fully available? And by the way, concealed carry is not fully available. It's not unregulated. Those cases back in, like the Nunn case, and Bliss versus Kentucky, and the State versus Reed and State versus Mischel, those cases, first of all, the cases that said one concealed carry could be banned, open carry was unregulated. There was no licensing requirement there. So to ban concealable weapons was not- So you're running low on time, I think. So let me, as I understand it, your argument is that they're not fungible. Just because, I think there is some precedent for the fact that you can ban, you can't ban, you can ban concealed carry if there's open carry. That argument is out there. The Supreme Court's mentioned it in cases. The question is, can you just flip it? And what is your position on that? You cannot flip it. Absolutely not. Because it was deemed an evil practice, and that's why concealable weapons at the time in the 1840s were banned. I guess the question would be, is there, since we're extracting principles and various levels of generality in this circuit, I guess I'll ask the State where they find the principle that these things are fungible, and that you can just, you know, you can allow, okay. But I don't know if you want to keep going or reserve time. Let me ask you another question. Since we're on Bruin, and I think his questions were dead on for you, Bruin is really particular and peculiar to me. Because if we only look at the history of banning concealed carry, concealed carry was the public carry most banned in history. And yet, it was the ban the Supreme Court said was unconstitutional in Bruin. Correct. Why? Could it be that open carry was already banned and remained banned in New York, and thus because it was banned, therefore the ban on concealed carry had to be unconstitutional? Whereas now California, they, concealed carry is allowed in California, so why can't they ban open carry? There is zero historical analog for banning open carry. It's been the preferred method of carrying weapons since the beginning of time and the dawn of ages. And it was only in determining that handheld pistols, pocket pistols, and breast pistols, and concealable weapons were dangerously unusual, and that the practice of concealing a weapon was deemed to be an evildoer's intent. And there were only five states that banned concealed carry of pistols and concealable weapons at a time when, at Nunn v. Georgia, it was 1846 when there were 29 states. It absolutely was not a national tradition, and I would submit that it doesn't even apply any longer because pistols are now weapons in common use, and concealed carry is deemed not to be an evil practice, but practiced by the public at large. So I'll reserve what time I have left for rebuttal. Thank you. Thank you. Good afternoon, and may it please the Court, Aaron Pennekamp, appearing for the Attorney General. The Supreme Court has repeatedly explained that the right protected by the Second Amendment is not a right to keep and bear arms in any manner whatsoever. It's cautioned that nothing in its Second Amendment jurisprudence should be read to suggest that shall-issue licensing regimes like California's are unconstitutional, and it has surveyed the relevant history and tradition and suggested that governments are free to lawfully- Let me ask you, and I'll interrupt your, because it really, you kind of hit the nail on the Your briefing depends very heavily on the fact that this is a licensing regime, and I think that there's obviously more support for the argument that you can license things or you can regulate things from the Supreme Court precedent. The challenge I'm struggling with in this is, is this a challenge to a licensing regime or is this a challenge to a ban, and that becomes sort of a framing issue. So I guess I'll ask you some of the questions I asked her because I think, and I think I know the answers to these, but I could be wrong. So you can't get, you cannot get a license, first of all, you're banned by law from open carrying in, let's just say, major metropolitan areas or in urban areas, counties over 200,000 in population. Is that correct? You're banned from getting a license to open carry in those large populations. And so you're banned from carrying because if you can't get the license, you can't carry. Is that correct? Oh, that's not entirely true, Your Honor. There are other exceptions to the open carry prohibition, including in sort of an exigent circumstances exception. So if you're presented with a imminent risk of danger to yourself or your property, there are circumstances in which you are allowed to open carry even in those circumstances. So is that, I mean, that's actually probably important because, I mean, let's say it was the flat ban on open carrying with a few of these, you know, allowed, like, you know, if another, if Iran attacks us, you know, you can open carry, right, you know, if they attack California. But like those, if you had some exceptions like that, would you call that, would you still call that a licensing regime or would you call that a ban? Well, I think we're talking about slightly different things. I mean, I think these sort of exigent circumstances exist. Those would be, that would be like a ban with exceptions, I would think would be a good way to characterize it. I think that's right. I think that's separate from the sort of licensing.  So, because that's important. Exceptions can matter. I agree with they can matter, but also how we characterize this kind of matters because I'm trying to, if you, you pretty much can't, the average person in their average circumstances cannot carry openly in the, in urban areas, in the counties that have over 200,000 people. Is that correct? I think that's it. And you can't get a license to do that. Like it's not like, it's just, it's a little bit like having the state characterizing this as a licensing regime. It's sort of like saying you can't drive a car in wilderness, in the wilderness, right? And then saying, and so I'm challenging that under, I don't know what my theory would be to challenge. And then saying, well, this is just a licensing regime. You say, wait, but there's a flat ban on driving, driving cars in wilderness areas. It's a ban. And maybe that's allowed, but like a list, let's at least be realistic about what we're characterizing it as. And so if you can't carry and you do disagree with their characterization that 95% of the population in California is in those areas where you can't get a license to open carry. This court reached that conclusion in the last case. I didn't do, I didn't rerun the population numbers, your honor, but I think it is probably fair to say that that's accurate. And would you agree that if you live in one of those urban areas, so for 95% of the people, they can't get a license to open carry because just the way the licensing is set up. I'm putting aside this whole question of whether you can get a license at all because of DOJ form, but let's assume you can. If you live in San Francisco, say, you can't get a license to open carry, not only not in San Francisco, but you can't get a license to open carry in Nevada County, right next, you know, that rural county right next to Nevada. Is that correct? You can only get that if you're a resident of Nevada County. That's correct, your honor. So you are, if you live in San Francisco, you are banned from open carrying anywhere in the state. You would agree or, except for those exceptions. Yes, your honor. But there's no dispute that one that lives in San Francisco who qualifies can get a concealed carry license. No, I know. I know. I'm just trying to, but it's just a little bit like saying, you know, you can't drive a car. So I decided I'm going to challenge not driving a car in a wilderness area. And then you say, yeah, but you can ride a camel, you just got to get a license for riding a camel. So this is really a licensing restriction. I mean, no, this is a car ban. And you're like, no, it's a licensing restriction. You see the challenge I'm having with that. I do, your honor. But I think, taking a step back, I think we need to remember that this is a facial challenge to two statutory provisions, which together, yes, broadly prohibit open carry to the extent that one doesn't get a license. Now because this is a facial challenge. No, no, no. They still broadly carry open. This is where I'm struggling. But they broadly carry open, they broadly ban, prohibit open carry, even if you do get a license because you can't get a license to open carry. That last part of it is what I'm struggling with. You can't drive the car in the wilderness. They broadly ban driving cars unless you get a license to ride a camel. Like I don't understand. I'll try to answer your honor's question this way. So a facial challenge, the upshot of a facial challenge is that it's Mr. Baird's burden to show that the statute is unconstitutional in all of its applications. So to the extent there is one application, it remains constitutional. That's a little bit of a, how does that, here's why I struggle with that a little bit. Because if you think about the Bruin case, the Bruin case was a challenge. I'm not sure it was actually a challenge to open carry or concealed carry. As I understand Bruin, it was a challenge to public carry, right? They deliberately framed it when they challenged it broadly and they weren't so worried about whether it was, because they say we can't, it's kind of like Peruta, we can't carry at all because we're banned both ways. And so what they could have said is, the Supreme Court could have said, well, you can ban people from carrying at a courthouse, in a courthouse, or you can ban people from carrying in things that we would all agree in a school. And so it's not unconstitutional, that ban is not unconstitutional in all of its applications. So you can't facially challenge the ban. That's not what they did though in Bruin. Well, I mean, I think that would be a little bit comparing apples and oranges, but I think just thinking about licenses. So as a facial statutory matter, open carry licenses are available in about half the counties. Why is this case not like that? Because you can't carry a 95% of California, you cannot open carry a 95%, you can't get a license to carry a 95% of California. And 95% of Californians, the ones that live in those areas, by 95, it's not geographical, it's the urban part, but the 95% that live, 95% of Californians cannot get an open carry license. I understand there's a separate question of, well, once we correctly characterize it, now we have to ask whether that's allowed. But I'm just saying as far as characterizing, why is that not more like the ban in Bruin that was considered? Because in Bruin, you could, there were definitely areas where it was allowed to ban open carry and that didn't kill their ability to, same thing here. Like you got a relatively small 5% by one way of measuring it, where you can in theory get an open carry permit, or 5% of people, but for the other 95% of people, they can't. And that doesn't even include the fact that people like, I believe the plaintiff in this case, Mr. Barrett, he can't, it works the other way. Make sure I understand the facts, but it works the other way too. In theory, if he could get an open carry in whatever rural county he lives in, that open carry license would only be good in that county, right? It wouldn't be good in the rural county next door where in theory somebody could go, and it certainly wouldn't be good in San Francisco or L.A., is that correct? That's correct, Your Honor. So one could imagine a different claim brought by a different plaintiff that specifically challenged the geographic restriction on the availability of open carry licenses. That's not Mr. Barrett. That's not the claim that he's put before this court. I'm not sure if that's true, because he specifically said he wanted to carry in the urban areas in his complaint, right? He says he wants to carry throughout the state, but again, at least, so here is a constitutional And your answer is, well, yeah, but you could get a license that would let you carry in your county. How does that, how does that Mr. Barrett's burden in a facial challenge is to show that these statutes, it would be unconstitutional to enforce these criminal penalties in all circumstances. So a person like Mr. Barrett in Siskiyou County, where a open carry license is available as a matter of statute, it would certainly be constitutional, assuming we think the Supreme Court is right, that licensing regimes are consistent with the Second Amendment, it would be constitutional to continue to enforce this criminal penalty in these instances. So in your view, if you had like a, and I, and I hope I'm not interrupting, but I want to, I really want to push back on it. So let's say California has passed a law that says it can't open carry or conceal carry, and it can't carry publicly anywhere except for in this little five foot circle in the middle of the state. And you could not challenge that facially because there's this five foot circle, this, we call it a free speech slash speech marked out carry zone where you can, where you can carry again. And you could never challenge that facially. That seems kind of like, that, that Bruin, I'm not sure Bruin could have been brought if that's really true. Your Honor, again, because this is a facial challenge, there are consequences that flow from that. Mr. Baird could have attempted to bring an as applied challenge that would have been specific to the facts of his case, but, but the district court dismissed those claims to the extent they ever existed. And Mr. Baird has made no effort to revive those as applied challenges in this case. So again, what we are left with is a facial constitutional challenge to just two statutes, which do not talk about licensing requirements, do not apply any of the geographic restrictions that Your Honor is talking about. And it said his claim is that these criminal penalties would be unconstitutional if applied in any circumstance. What if we disagree? What if we suggest that he has an implied challenge, but the district court just simply ignored it? Tried to get rid of it by suggesting that it was a licensing or it was something like that, or that he didn't have standing or whatever. What if we were to say, this is an as applied challenge, as applied to him. And that's the challenge, because that's what she suggests, there's an as applied challenge. She says there's a facial challenge, which you're arguing now, but what if we were to disagree? What if she says there's an applied challenge and it's an applied challenge that's a ban to him? It's a ban to him because he can't ever get this license. What do you say about this idea that California has never issued any of these licenses? Well, if I can take a step back, even assuming that there was an as applied challenge, I think the district court was absolutely right. If he wanted to bring that claim, he would need to bring it against the local licensing authority. You're just suggesting he doesn't have the standing to bring it against the state of  Well, what if I disagree with that? I mean, my worry is that if the attorney general won't even issue the licenses or the applications to get the license, that he has a challenge against the attorney general to get him a license, get him a form to get the license. And so that makes it an as applied challenge. How do I deal with that? The legislature has given authority to issue to review and issue licenses to local licensing authorities, the county sheriffs, the municipal police chiefs. The attorney general does not have power to review applications. But the attorney general is the only one who has the power to give him the form.  And the attorney general has published a form, as your honor has noted, form 4012 is available on the California DOJ website. And you're saying now, as you've said before, that that form is the form he should have used to get an open carry license in the small counties. That is the form that the state has published that the counties can then use for purposes of accepting and reviewing applications. Yes, your honor. Who should he sue if he wants to get an open carry license in San Francisco? Your honor, the statute doesn't allow him to get an open carry license. So who should he sue in order to open carry in San Francisco? I think he would still need to sue the local licensing authority. That's kind of weird. That's like suing the DMV to get a license to shoot spacecraft into, you know, when it's disallowed or something by federal law. You wouldn't sue the DMV, the local DMVs. That can't be right. Your honor, I think there's a reason why he hasn't sued any local licensing authorities. It's because he's not actually interested in getting a license. Right, right. Because he's he's not actually interested. I kind of agree with you on that. He's not actually interested in getting a license that doesn't do him any good. You're saying he has a license. He could get a license to ride a camel and he's like, I don't want to ride camel. I don't like camels. I want to drive a car. And so and you're saying he needs to sue the person who could give him a license to ride a camel. He's like, I don't care. I want to be able to drive a car in the wilderness. So who does he sue to get to challenge the fact that he can't drive a car in the wilderness? It's not the person that gives him a license to ride a camel. Who does he sue in order to try to try to get the law that does not allow him to open carry in San Francisco struck down? Who does he sue about that? So if his claim is not, if his claim is something different from I want to get a license to do this activity. And instead, his claim is these statutes are unconstitutional under the Second Amendment because they impose whatever geographic restrictions that aren't consistent with the Second Amendment. Yes, he would sue the attorney general. But but again, I want to be clear. There's been a lot of discussion about licensing. I think from the face of is there anything in his thing that says I only want to carry in the county that has he said, I only want to carry me. Did you did you get to depose him or not? He has ever deposed. And did you ask him, do you only want to carry in the in the county that that you I did not personally depose him. I don't remember if I can guarantee you didn't ask that because you guys are all smart attorneys and you know that his answer would be, no, I want to carry everywhere, I think. But I think his answer was that he is not interested in applying for a license whatsoever. So his his relevant right. But you keep saying that. But the license doesn't get him what he because nobody could give him a license. Right. Right. Because because there's some of this, you would agree that some of the stuff he wants to do, like literally anywhere outside his county, he cannot open carry anywhere outside of his county with a license. That's correct. So so what good does it do to apply for a license that that that if what he wants to do is carry outside of his county? And I don't understand your your argument on that. Your Honor, my point is that to the extent what his claim is, is he wants to open carry and he wants to do so without getting a license. Our position is that that is not something that is required by the Second Amendment's plain text or by the history and tradition. Well, I mean, but if there's no license to get like I guess you keep saying you can't you it's OK for states to allow a license. But it's kind of irrelevant in this case because there is no license available for literally the vast majority of where he wants to carry your honor, even if we assumed that you're correct on that premise, that that let's say Mr. Baird is right. No open carry licenses have ever have ever issued or will ever issue. Let's assume that he actually challenged that is not right. That's not what I'm saying. I just want to make sure that you're you're it has nothing to do with. Am I right that he cannot get an open carry license? Whatever county lives in? I don't remember what kind of whatever he can't get an open carry license to allow him to open carry anywhere outside that county in California. That's correct. It's impossible. So let's assume for a second. That's what he wants. That's what he wants. Then the California statutory scheme is still consistent with the Second Amendment. Because what? Right. But it's not a licensing problem, right? It's a fact that he can't. And then we have to do that. Then we have to do the work that. But most of your brief was was about was treating this like it's a licensing problem. That's because that's the relevant conduct that he's he's put before the court. Again, he he is the master of his complaint. He chose to bring the claim that he chose to bring. And what he what he chose to challenge were just two statutes which do not entirely prohibit open carry. They only prohibit open carry to the extent you can't get a license or you don't have a license or another exigent circumstances applied. And again, let me let me change this. Do you think that the plaintiff's conduct is covered by the plain text of the Second Amendment? So we do think that there is room for a step one Bruin argument in this case, given Mr. Barrett's particular challenge. And again, this is because. So you're agreeing, as the district court did, that the plain text covers the alleged conduct here? No, Your Honor. I'm sorry for for for misspeaking. What I think the court could do is it could resolve Mr. I'm not asking you what I could do. I'm asking you, do you think that the conduct charged is covered by the Second Amendment? So to the extent that Mr. Barrett's relevant conduct is not just openly carrying and instead is openly carrying without a license, we think that is conduct that is outside the plain text of the Second Amendment. So as a fact, to the extent that it's just carry without a license, it's not covered. What if it's that I can carry at all? Is that covered? We would concede at that point you would need to move on to Bruin step two because we're talking. OK, if we move to Bruin step two. You'll agree with me, I guess, if we move there, that the most relevant and proven evidence would be that which prevailed at the time immediately before the Constitution was put together. And after the framing of the Constitution and evidence from the antebellum, which is particularly critical because it comes later on when the 14th Amendment was put together. You'll agree with me that's the appropriate history I look at. We think Supreme Court precedent is clear. Yes, Your Honor, that that is the period that is most relevant. That doesn't mean we ignore later precedents so long as it's consistent. Or before or prior. Correct, Your Honor. Well, I looked at that. And during that time period, there were no state statutes. There were no public judicial decisions. There were no legal commentators which addressed whether the states could ban open carry for self-defense while allowing concealed carry. None of the regulations banned open carry while allowing concealed carry. None of the history did that. How does that merit up with what California is doing? I can't find any history to suggest what California is doing is the way it's been done in history. Well, two responses to that, Your Honor. The Supreme Court looked at this exact same set of historical analogs and the principle that it drew from those lessons was not that concealed carry is not protected by the Second Amendment and can always be prohibited and the only way that one can publicly carry is through open carry. Instead, it drew a more generalized principle which is that governments are free to adopt manner of carry restrictions including very restrictive restrictions that prohibit entirely one form of public carry so long as another form of public carry is available. I appreciate your argument, but the antebellum decisions that I looked at, and I looked at all of them, Chandler, Nunn, Reed, Bliss, they uniformly hold that a state may ban concealed carry without a problem. But they can't ban open carry. They say the only manner of public carry that effectuates the right of self-defense guaranteed by the Second Amendment and is therefore the public carry protected by the amendment is open carry. Those are the decisions from the antebellum decisions that I looked at. If I look at the 19th century, numerous states enacted laws banning the concealed carry of firearms, but they allowed open carry. They don't address this particular issue and the reason I looked at it is because it seems to me your brief says as long as we allow one, we don't need to allow the other. And not only did we do that, we gave some of the other because we let them license in the little counties. So I looked at all this historical stuff and there's nothing that suggests that the ban California wants to do, if it's really a ban, and I'm not suggesting that you have to agree that it's a ban, that it would work in the history. Your Honor, if the government were obligated to identify a historical twin or a dead ringer, you may be right. But we know, at least from Rahimi, that the test in this kind of case is whether there is a relevantly similar historical analog. And even in Rahimi, the court didn't require a one-to-one match between the modern regime and the historical analogs. And in fact, I think we'd all recognize that the historical analogs were quite different from the statute that was at issue in Rahimi. Here we have actually very close analogs. You have to look at the how and the why. So which laws shows it's the how and the why is historically analogous? Which law would that be? So I think the court doesn't need to identify one. And I think, as an initial matter, the court's obligation is to look at the whole sweep of history and determine whether, taken together, those historical analogs support the current regime. I think, if the court wanted to, though, I think the court could focus on the early 1800 state statutes that broadly prohibited concealed carry. Because we know from those statutes that, one, they were adopted for a very similar justification to the modern regime, and that the state legislatures thought that a particular form of carry was particularly dangerous to the public. Yes, at the time, that was particularly focused on concealed carry. But historical circumstances change. And there's no reason why— And in California, the ban on open carry was actually has a pretty sordid history. It was because the Black Panthers were openly carrying the state capitol, and it was motivated by racism. So I'm not sure that applies here, the why part. So many legislatures act for multiple reasons. I don't know that we can assume that the entire legislature was acting for a racist purpose. I think what we can determine from the current statute is that the California legislature has determined that open carry poses a particular public safety risk. That's what's described in the Rainey Declaration in the record in this case. So you're asking us to use a nuanced approach here? No, Your Honor, not at all. We have not asked the court to apply a nuanced approach in this case. And it seems to me you are, because what you're really saying is, hey, in the past it was a prohibition of concealed carry, and we're really allowing concealed carry, so we're going to allow open carry. And so— No, Your Honor, I think what this is an example of is a good reason why the Supreme Court noted in Rahimi that the law is not trapped in amber. Some historical facts and circumstances and context can change. But the principle remains the same. So the principle that we're asking the court to rely on is the same one that the court announced in Bruin when it looked at this same history and tradition and determined that governments, again, were free to adopt broad manner of carry restrictions, including entire prohibitions on one form of carry so long as they left open another form of public carry. Here, there's no dispute that concealed carry licenses are available throughout the state. So to the extent someone cannot open carry, the burden is simply that in that jurisdiction they have to—concealed carry. And there's been no serious suggestion that concealed carry is somehow an ineffective right or an ineffective method to vindicate one's Second Amendment right. Can I ask you, I know we're running low on time, but I want to ask you the question I asked about Peruta, because a similar argument was made. It was the reverse argument, but it was like, we can't open carry, so you've got to allow concealed carry. And our court shot that down in Peruta, and as I understood, the majority said, essentially, I don't know if they used the word fungible, but it doesn't—just because it goes one way doesn't mean it goes the other way. You have to look and see what would be protected. But your argument seems to be at odds with that some, because you basically are saying the principle at a high enough level of generality that as long as you allow some, you can ban other. But doesn't—isn't that kind of inconsistent with Peruta or not? Your Honor, I mean, I think we'd all agree that Second Amendment jurisprudence has come a long way since the Anbanc decision in Peruta. But we also, I mean, you're aware that the state—I'm trying to remember if California, but certainly other states have, and probably California, have argued that certain of our precedents, like our felon and possession precedents and stuff, are not abrogated by these more recent. So you kind of have to look at it on an issue by issue. And that thing, I don't know that Bruin addressed. So is that abrogated or not? So Peruta's square holding was diametrically opposed to the holding in Bruin. I mean, Peruta was about whether San Diego could have a good cause—or there could be a good cause requirement. Well, it was really kind of—was it Teeter? It was a later—it was the Hawaii case that was really diametrically—because Hawaii is where I think we said, if I'm remembering correctly, we said, you just—no, you can ban both. You can ban both. But in Peruta, we kind of reserved the question of whether you could ban both. And I thought we kind of said, well, assuming you can't ban both, it would be open carry you'd be allowed to have. Well, I think the majority opinion was careful to say that it wasn't actually reaching any holding or conclusion as to any open carry restrictions, and it said, what we're really deciding is just this concealed carry case that's before us. But I think it was doing that because it was leaving open the possibility that you could ban both forms of carry, that you wouldn't have—but that's what we know Bruin has foreclosed, right? That's right, Your Honor. But it did seem to say that if you've got to allow one, it's going to be open carry. It did say that. So why is that— Your Honor, but it was relying on the same historical precedents that the court looked at in Bruin, and Bruin reached a different conclusion. So I don't see how—even if that conclusion was somehow a holding or something else that could have been binding at some point, which we don't think it was, but even if it was, it would be clearly irreconcilable with Bruin's analysis because, again, Bruin looked at the exact same history and came to the conclusion, a different conclusion from the court in Peruta, which was that, yes, you can ban one or the other. You just have to leave one available. So that is your—I just want to make sure. That is your position, that you basically—it's almost what I'm calling fungibility. That's not your word, but like you—it doesn't matter what areas are banned. They're kind of fungible. That's why I'm calling it fungible, because you can ban certain things as long as you allow enough left, and that's the principle that you're extracting from— Yes, Your Honor, and there's good reason for that. Again, the core Second Amendment right is the ability to publicly carry for purposes of self-defense, and there's been no suggestion that concealed carry is somehow an ineffective manner to defend yourself as opposed to open carry. And in fact, I'd point the court to 7ER 1498, which is Mr. Baird's First Amendment complaint, so his complaint just before the operative one, where he specifically alleged that, quote, concealed carry is the universally preferred method of law-abiding individuals, including plaintiffs, to carry a firearm for reasons including tactical advantage over an attacker, convenience of carry location, accessibility of one's firearm for purposes of self-defense, and practical considerations relating to one's wardrobe. So the burden that we're talking about here, Your Honor, is a minimal one. We're talking about in certain jurisdictions, someone is not going to be allowed to open carry, and instead they're going to have to concealed carry. Concealed carry is a perfectly available, effective method for vindicating the Second Amendment right. If I could ask one quick question on a slightly different topic. Do you concede Mr. Baird's argument or contention that no open carry license has been issued in counties with fewer than 200,000 people? Your Honor, the record is the same as it was at the preliminary injunction stage, so there isn't any record evidence of any open carry licenses having been issued, and standing here today, I don't have any additional evidence to offer. Your Honor, sir, you said there isn't any record evidence that they haven't been issued. That they have been issued. So they have. Okay, good. And I'm looking at the form, the State of California issues, to get a concealed weapon, and I guess your contention is they could also be used to get open carry in these counties, smaller counties, but the title refers to concealed weapon, and I did a quick search of it. It uses the word concealed or CCW 52 times. It's a 17-page document. At one point, it does mention the word exposed, that you can use a gun in those counties. I mean, isn't this pretty deceptive? I mean, your boss would be suing private companies if they did something like this, where you have this, tuck it, hide it in a little sentence, 17-page documents, big headline, concealed weapon, CCW, concealed, concealed, concealed, and then you tell them, oh, look, it's right here. Why is it formatted that way? Why does it say concealed weapon in counties larger than 200,000 and open carry? I hate to argue technicalities, Your Honor, but the form defines CCW as a license to carry concealable weapons, so it's not necessarily a concealed weapons license. That's exactly my point. A lot of this suggests a little bit of bad faith here about the statute. No, Your Honor. Not at all, Your Honor. It tracks the language of the statute, so the statutory scheme is set up as licenses to carry concealable weapons. You sound like a defense lawyer that your boss would be going after these large companies who are just deceiving consumers. Well, I don't think that's true. I won't belabor your point at this point, so great, unless there are other questions? No? Great, thank you. Thank you, Your Honor. We'd ask the court to affirm. So I want to make a couple of points with the remaining time I have left. The Bruin case was a challenge to proper cause. There was no challenge to the licensing requirements specifically, and in fact, the plaintiffs in the Bruin case conceded that licensing was constitutional, which is not a concession that we make here. There is absolutely no history or tradition of licensing the open carriage of a handgun, and to the extent that one- But if you amended your complaint to take out those statutes that are directly as it relates to licensing, then it seems to me you're not challenging it either. We're not challenging it. I mean, that's my worry. That's why I read through it, and that's why I ask you the questions. Well, let's get to a question that hasn't been answered yet, and that is whether the criminal statutes violate the Second Amendment, I mean, because the criminal statutes, they're the teeth, they're the enforcers for the licensing statute. If there weren't any criminal statutes, like the two specific statutes that we're challenging here, if those were deemed to be unconstitutional and violating the Second Amendment, then who cares about the licensing statute? There'd be no teeth. It seems like these arguments are relevant to him carrying in his home county, because arguably, theoretically, maybe he can get a license to open carry in his home county. I don't ... Am I correct that he wants to carry outside of his home county, and that he has said he wants to carry? Is that in this case or not? Oh, yes. He has- Okay, so then what good would the license do him in carrying outside of his home, openly It wouldn't, and we ... Our position is- So why ... So you understand, you're kind of messing up your own case a little bit. By focusing on the licensing requirement, the state is making this about, you don't want to have a license. I understand you and your client, you guys hate licenses. I mean, I understand that, but what does the license have to do with him carrying outside of his home county? We're challenging criminal statutes. We're not challenging the licensing statutes, but the only reason they're required is because there are criminal penalties associated with not getting a license. So to the extent that there is no history and tradition of criminalizing someone for just merely walking out of their home and traveling throughout the state of California like he was able to do, or the public was able to do in 1967, back to the beginning of time, that if that's going to be punished as a crime, then that's a violation of the context of the Second Amendment. And I would also just say, when we talk about the- If you could wrap up here, you're over time, so ... Talk about one manner of carrying versus the other, and one being banned and the other being available. Available isn't the term. It's unregulated. Open carry was unregulated at the time the concealed carry was banned. Thank you. Great. Thank you. Thank you both for the very helpful arguments. The case has been submitted, and we are adjourned. All rise. Thank you.
judges: SMITH, LEE, VANDYKE